# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY HAUSER, et al., <br> Plaintiffs, <br> v. <br> CITY OF EL CAJON, et al., <br> Defendants. | Case No.: 16cv3091 W (MDD) <br><br> **ORDER DENYINGING DEFENDANTS' MOTION TO DISMISS [DOC. 6]** |

Defendants City of El Cajon and El Cajon Police Officer Samson Pak move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the reasons that follow, the Court **DENIES** Defendants' motion [Doc. 6].

## I. BACKGROUND[1]

Plaintiffs Larry and Judy Hauser are the parents and successors in interest of decedent, Kelsey Hauser. (*Compl.* [Doc. 1] ¶ 2.) Defendant City of El Cajon is the employer of Defendant Samson Pak and other police officers referred to herein. (*Id.* ¶ 6.)

On January 16, 2016, at approximately 1:30 a.m., Kelsey was a passenger in a stolen 2014 Toyota Yaris driven by Geoffrey Sims. (*Compl.* ¶ 10.) El Cajon police officers attempted to the stop the car, but Sims fled from the officers. (*Id.*) Defendant Officer Samson Pak engaged in a high speed pursuit of the car on both the freeway and surface streets. (*Id.*)

When the Yaris drove into a cul-de-sac on a surface street, Officer Pak, a short distance ahead of several other officers, rammed the right passenger side of the car with his police car, at a speed of approximately 25 miles per hour. (*Compl.* ¶ 11.) As he did so, Officer Pak saw Sims in the driver's seat, Kelsey in the passenger seat, two males in the back seat, and a dog in between Sims and Kelsey. (*Id.*)

After hitting the Yaris with the front of his vehicle, Officer Pak got out of his vehicle with his gun drawn. (*Compl.* ¶ 12.) The Yaris slowly backed up, and Officer Pak "moved from behind the car to a position in front of the car, then immediately to a position approximately 15 feet off the passenger side of the car." (*Id.*) As the car moved backward then forward at a very slow rate of speed, Officer Pak fired several shots "into the Yaris at the passenger." (*Id.*) Kelsey was hit twice, in the jaw and chest. (*Id.*) She was conscious and in severe pain until paramedics arrived, but died following several emergency medical procedures. (*Id.* ¶ 13.) The Complaint alleges and Defendants' motion concurs that at no point did Kelsey do anything that posed a threat to Officer Pak.

---

[1] Throughout this order, parties and witnesses will be referred to by their last name. However, to avoid any confusion, where multiple parties or witnesses share the same last name, they will be referred to by their first name.

2

(*Id.* ¶ 12; *P&A* [Doc. 6-1] 10:16–17.)  A gunshot also hit and killed the dog in the front seat.  (*Compl.* ¶ 12.)  No shots hit the driver.  (*Id.*)

On November 27, 2016, Kelsey's parents filed two claims against Officer Pak under 42 U.S.C. § 1983: a 4th Amendment excessive force claim on Kelsey's behalf, and a 14th Amendment loss of familial relationship claim brought on their own behalf.  (*Compl.* ¶¶ 14–21.)  Defendants now seek to dismiss these two causes of action, arguing the Complaint fails to allege sufficient facts to support a 4th or 14th Amendment claim, and that Officer Pak is entitled to qualified immunity.  (*P&A* 14:22–15:3.)  Plaintiffs oppose the motion. (*See Opp'n* [Doc. 7].)

## II.  LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

3

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

III. **DISCUSSION**

A. **The Complaint's factual allegations support a 4th Amendment violation claim.**

Plaintiffs' first cause of action alleges a 42 U.S.C. § 1983 claim based on the contention that Officer Pak's shooting and killing of Kelsey constituted an excessive and unreasonable use of force and thus an unlawful seizure, in violation of the 4th Amendment. (*Compl.* ¶ 15.) Defendants argue the claim should be dismissed because Plaintiffs fail to establish Kelsey "was seized under the 4th Amendment because no facts establish Pak specifically intended to restrict [Kelsey's] freedom of movement through the use of force." (*P&A* 1:17–20.)

A 4th Amendment seizure occurs when an officer intentionally restricts another's freedom of movement. Brower v. City of Inyo, 489 U.S. 593, 596 (1989). The detention must be intentional because the 4th Amendment protects against misuse of power, "not the accidental effects of otherwise lawful government conduct." Id. In effecting a seizure, an officer's use of deadly force is reasonable only if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985).

The central issue Defendants raise is whether the Complaint adequately asserts that Officer Pak intentionally shot Kelsey. The Complaint alleges that Officer Pak "fired several shots into the Yaris, *at the passenger*, at least two of which struck the passenger, Kelsey Hauser." (*Compl.* ¶ 12, emphasis added.) Defendants argue this allegation establishes no more than a possibility that Officer Pak intentionally shot Hauser and that a more concrete statement of intent such as Officer Pak "intended to shoot Hauser" or

4

"intentionally shot Hauser" is required. (*Reply* [Doc. 8], 4:14–16.) Although Defendants' proposed allegation is a clearer indication of Officer Pak's intention when firing his weapon, the Court disagrees that the Complaint's allegation is not sufficient.

As set forth above, on a motion to dismiss, the Court must accept all material allegations of fact as true, and construe the Complaint in a light most favorable to Plaintiffs. Vasquez, 487 F.3d at 1249. Under this standard, the inclusion of "at" provides an adequate inference of Officer Pak's intent to shoot Kelsey. In short, it is reasonable to infer that when you shoot a gun "at" someone, you intended to shoot that person.

Moreover, adding plausibility to Plaintiffs' assertion is the fact that Officer Pak shot at Kelsey from only 15 feet away, while on her side of the car, hitting her twice, and not hitting the driver. Defendants respond by highlighting that because Kelsey was not driving and had done nothing threatening there would have been no reason for Officer Pak to intentionally shoot Kelsey. (*P&A* 10:16–17.) But such an argument begs the question Plaintiffs raise in this lawsuit: why the officer fired three shots into the passenger side of the car while standing only 15 feet away. For these reasons, the Court finds the Complaint's allegations are sufficient to support a 4th Amendment violation.

### B. The Complaint's factual allegations support a 14th Amendment violation claim.

Plaintiffs' second cause of action alleges a 42 U.S.C. § 1983 claim based on the contention that Offer Pak's acts deprived Plaintiffs' "of their constitutionally protected due process right to the love, support, affection and companionship of their daughter, in violation of the Fourteenth Amendment. . . ." (*Compl.* ¶ 20.) Defendants raise two grounds for dismissal. First, Defendants contend the lack of a 4th Amendment claim prevents Plaintiffs from raising a 14th Amendment claim. (*P&A* 11:10–12.) Second, Defendants argue the Complaint contains no facts "establishing Pak's use of force was 'consence-shocking' [sic] in that it was unrelated to any legitimate law enforcement objective and employed solely for the purpose of punishing [Kelsey]." (*P&A* 1:20–23.)

5

The standard of culpability for a due process right to familial association claim is whether the officer's conduct "shocks the conscience." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). Viewing the facts in the light most favorable to the nonmoving party, it must be demonstrated that the officer acted with a purpose to harm for reasons unrelated to legitimate law enforcement objectives. Id. Whether a jury could infer that an officer was acting for purposes other than legitimate law enforcement is determined by looking at the totality of the circumstances. City of Sacramento v. Lewis, 523 U.S. 833, 850 (1998).

Defendants preliminarily argue that "the absence of an actionable 4th Amendment excessive force claim precludes [Plaintiffs'] 14th Amendment loss of familial association claim." (*P&A* 11:10–12.) This argument fails, as this Court has found the allegations are sufficient to support a 4th Amendment violation claim.

Defendants next argue that there are no allegations establishing Officer Pak deliberately shot Kelsey with a purpose unrelated to a legitimate law enforcement objective. (*P&A* 11:25–26.) The central problem with Defendants' argument is that based on the Complaint's allegations, there would have been no reason for Officer Pak to target Kelsey. In fact, Defendants conceded this point and highlighted that Kelsey "was not driving but just was sitting in the car while it was moving, and she did nothing threatening and never tried to flee." (*P&A* 10:16–19.) Given that at this stage in the litigation all facts pled must be accepted as true, the Court finds that because there was no legitimate law enforcement objective for Officer Pak to intentionally shoot Kelsey, it is reasonable to infer "the officer acted with a purpose to harm for reasons unrelated to legitimate law enforcement objectives" and thus his conduct was "conscience-shocking." Porter, 546 F.3d at 1137.

//
//
//
//

## C. Defendant Pak is not entitled to Qualified Immunity

Defendants next argue that if the Court finds viable 4th or 14th Amendment claims are alleged, Officer Pak is nevertheless entitled to qualified immunity. (*P&A* 12:8–13.)

Qualified immunity shields government officials from liability for monetary damages unless the plaintiff establishes that (1) the conduct violated a constitutional right, and (2) the right was "clearly established" when the misconduct occurred. Pearson v. Callahan, 555 U.S. 223, 232, 236–42 (2009) (modifying the two-step inquiry in Saucier v. Katz, 533 U.S. 194 (2001), to allow courts discretion in deciding which prong to address first depending on the facts of the particular case). "Clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right" with careful consideration to the facts of the particular case. Anderson v. Creighton, 483 U.S. 635, 640 (1987). In determining whether a right is clearly established, courts "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." Prison Legal News v. Lehman, 397 F.3d 692, 702 (9th Cir. 2005); Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir. 2002) (looking to "decisions of our sister Circuits, district courts, and state courts" in evaluating if law was clearly established).

Defendants argue that Officer Pak is entitled to qualified immunity because "[w]hether passengers can bring Fourth Amendment excessive force claims under any factual scenario is uncertain" and therefore Plaintiffs cannot satisfy the "clearly established" prong. (*P&A* 12:8–10.)[2] But similar to Plaintiffs' claim here, in Tubar v. Clift, 453 F. Supp. 2d 1252 (W.D. Wash. 2006), the district court denied an officer's motion for qualified immunity, and allowed a passenger shot by the officer to pursue his Fourth Amendment claim. Id. at 1253. The decision was then affirmed by the Ninth

---

[2] Specifically, Defendants contend that because the Supreme Court has not ruled on the matter, then it is not "clearly established law." (*P&A* 12:n.3.) This argument is contrary to Ninth Circuit precedent holding that unpublished decisions and the law of other circuits may be used to determine whether a right is clearly established. Prison Legal News, 397 F.3d at 702; Sorrels, 290 F.3d at 970.

Circuit. See Tubar v. Clift, 286 Fed.Appx. 348 (9th Cir. 2008). Defendants' argument is therefore meritless.

Apparently recognizing that Tubar contradicts their argument, Defendants attempt to distinguish the case on the basis that, unlike Kelsey, the passenger in Tubar was a suspect who the officer intended to seize when he shot into the car. (*P&A* 13 n.4.) Again, their argument lacks merit.

Similar to Officer Pak, the officer defendant in Tubar contended that because he intended to shoot the driver, the passenger was not seized and could not maintain his Fourth Amendment claim. Tubar 453 F.Supp. 2d at 1255. In support of this argument, the officer relied on cases involving innocent or undetected bystanders or hostages who were accidently shot by officers. The district court rejected the argument because the passenger and driver were both suspects, who the officer "intended to stop and seize…." Id. In other words, the passenger's status as a suspect was important to establish the officer's intent to seize him when he fired his weapon.

In contrast, here, the Complaint alleges that Officer Pak specifically shot "at" Kelsey, while standing only 15 feet from her side of the car. These facts are sufficient to create a reasonable inference that he intended to shoot Kelsey, and thus seized her. Whether Kelsey was a suspect at the time is, therefore, immaterial at this stage in the litigation. More importantly, because Tubar was decided ten years before Officer Pak shot Kelsey, the Court finds the law was clearly established at the time of the incident and accordingly Officer Pak is not entitled to qualified immunity.[3]

---

[3] The Supreme Court has noted that particularized case law is only necessary in not-so-obvious cases. Brosseau v. Haugen, 543 U.S. 194, 199 (2004). Notwithstanding that Tubar is directly on point, the Court also feels this is an "obvious" case involving 4th and 14th Amendment violations. Specifically, Plaintiffs allege Defendant Pak intentionally shot Kelsey, while Defendants have acknowledged Kelsey was neither driving nor doing anything threatening. Under these circumstances, Officer Pak's conduct was contrary to Garner's holding that deadly force may not be used to affect a seizure unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Id. 471 U.S. at 1.

8

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Defendants' motion [Doc. 6].

**IT IS SO ORDERED.**

Dated: June 9, 2017

Hon. Thomas J. Whelan
United States District Judge